IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | Crim. No. 1:06-cr-424 |
| | : | |
| v. | : | |
| | : | |
| **TODD SMINK** | : | Judge Sylvia H. Rambo |

**M E M O R A N D U M**

Before the court is Defendant Todd Smink's Motion for Early Termination of Supervised Release, pursuant to 18 U.S.C. § 3583(e)(1), in which he asks the court to use its discretionary authority to terminate the remainder of his lifetime term of supervised release. (Docs. 55-56.) For the reasons that follow, the court finds that Smink has not met his burden to show that early termination of supervised release is warranted and thus will deny his motion.

I. **BACKGROUND**

The court assumes the parties' familiarity with the underlying facts. As relevant here, the investigation underpinning Smink's offense conduct began in 2001 when he attempted to use a credit card to access child pornography, leading postal inspectors to target Smink in an undercover operation that offered videos of child pornography. (PSR ¶ 4-5.) During the operation, Smink replied to a solicitation for catalogues of videos involving "Diapers," "Pedophilia," and "Bondage," and ultimately ordered two videos titled, "Spanking Boys" and "Boys Will Be Boys."

1

(PSR ¶¶ 6, 9.) The catalogue provided graphic descriptions of the sexual acts that the boys, ages eight through sixteen, engaged in during the videos. (PSR ¶ 9.)

Law enforcement delivered the videos and executed a search warrant on Smink's residence on December 13, 2006. (PSR ¶ 10.) In addition to the newly delivered child pornography videos, Smink was found in possession of an additional 37 child pornography videos, 521 images of child pornography on his computer, and over 4,000 images of child pornography on different media. (PSR ¶¶ 10-12.) The videos depicted prepubescent children engaging in sexual and sado-masochistic activity, including young boys being whipped and aggressively spanked. (PSR ¶ 12.) Further search of Smink's house revealed collections of boys' toys, clothes, and sneakers, as well as hundreds of pairs of boys' underwear and packages of baby diapers. (PSR ¶ 13.) Smink did not have any children at the time but was previously employed as a maintenance worker for Town and Country Day School in Harrisburg, Pennsylvania from 1985 until 2003. (PSR ¶¶ 4, 34, 43.)

On December 13, 2006, Smink was indicted for receipt of child pornography, in violation of 18 USC § 2252A(a)(2)(B) (Count 1), and possession of child pornography, in violation of 18 USC § 2252A(a)(5)(B) (Count 2). On January 29, 2007, he pleaded guilty to Count 2 pursuant to a written plea agreement. The probation office determined that Smink's guideline range was 97 to 120 months based on a total offense level of 30 and a Criminal History Category I. On May 9,

2007, the court sentenced Smink at the low end of the guideline range to 97 months imprisonment, a lifetime of supervised release, and a $15,000.00 fine. Smink served his imprisonment sentence and began supervised release on December 27, 2013. (Doc 34.)

On January 23, 2015, the probation office filed a petition for a warrant for violations of supervised release, alleging that Smink (1) failed to comply with the requirements of a sex offender treatment program, and (2) used a computer with internet access without prior approval. (Doc. 34.) The petition asserted that Smink was found deceptive during a clinical polygraph in response to three questions: (1) if he had sexual contact with minors; (2) if he used the internet to communicate with minors; and (3) if he viewed any substitute child pornography for masturbation purposes since being in treatment. (*Id.*) Two days prior to the petition's filing, Smink had been discharged from sex offender treatment due to his failure to follow treatment recommendations, dishonesty about or persistence in sexually deviant behavior or behavior that places another person at risk for sexual abuse, continued reliance on factors associated with the cycle of abuse including the use of pornography, and failure to be active and honest in treatment. (*Id.*) At a revocation hearing held on March 10, 2015, Smink admitted guilt to these violations and the court ordered that he "shall be continued on supervised release for a term of life." (Doc. 49.)

Now, after serving just over ten years of his lifetime term of supervised release, Smink asks the court to terminate his supervised release.

## II. **LEGAL STANDARD**

The court has authority to grant early termination of supervised release pursuant to 18 U.S.C. § 3583(e), which provides that:

> [t]he court may, after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7) ... terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation, if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice.

18 U.S.C. § 3583(e).

A defendant seeking to reduce his or her sentence bears the burden of persuasion. *See United States v. McDowell*, 888 F.2d 285, 291 (3d Cir. 1989) ("[T]he ultimate burden of persuasion should rest upon the party attempting to adjust the sentence."). In assessing whether the defendant has met that burden, the court must consider:

> (1) the nature and circumstances of the offense and the defendant's history and characteristics; (2) the need to afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide him with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentence and sentencing range established for the defendant's crimes; (4) pertinent policy statements issued by the United States Sentencing Commission; (5) the need to avoid unwarranted sentence disparities among defendants with similar

4

records who have been found. guilty of similar conduct; and (6) the need to provide restitution to any victims of the offense.

*United States v. Davies*, 746 F. App'x 86, 88–89 (3d Cir. 2018) (citing 18 U.S.C. §§ 3553(a)(1), (a)(2)(B)-(D) & (a)(4)-(7)).

After considering these factors, the court may provide relief if it is satisfied that "early termination is warranted by the defendant's conduct and is in the interest of justice." *United States v. Melvin*, 978 F.3d 49, 52 (3d Cir. 2020). "The expansive phrases 'conduct of the defendant' and 'interest of justice' make clear that a district court enjoys discretion to consider a wide range of circumstances when determining whether to grant early termination." *Id.* District courts, however, are not required to "make specific findings of fact" as to each of the § 3553(a) factors. *Id.* at 52-53. A statement that the court has considered the statutory factors is sufficient. *Id.*

### III.   DISCUSSION

In support of his motion for early termination of supervised release, Smink argues that his supervised release is no longer necessary to protect the public or provide deterrence, and that his work and family would benefit from its termination. He explains that he has successfully reintegrated into society, obtained employment, and reconnected with friends and family. Apparently overlooking his 2015 violations, Smink adds that he has been compliant with the conditions of his release and that he successfully completed a Commonwealth Clinical Group sexual offender group therapy program, which included his passing regular polygraph

examinations.[1] Additionally, Smink states that his job responsibilities as a maintenance worker on rental properties is hindered by the requirements of his supervision as he is unable to access rental homes—often occupied by families with minor children—without being accompanied by a coworker, and further, that he cannot work on any properties outside the Middle District. Finally, Smink adds that the restrictions placed on him have made it difficult to reconnect with extended family, including minor cousins, as he cannot leave the district or be in the presence of minors without an approved supervisor. In short, Smink argues that he has been rehabilitated and does not require supervision.

The Government counters that Smink's proffered reasons do not justify the requested relief because, among other things, the serious and ongoing nature of his offense conduct warrant lifetime supervision and his continued supervision protects the public from further crimes and provides deterrence. The court agrees.

Given the egregious nature of the underlying offenses which involved substantial collections of child pornography as well as boys' sneakers, underwear, and diapers, a lifetime term of supervision is not only justified but warranted. Indeed, considering the serious nature of his 2015 violations, which showed his continued

---

[1] In a discharge letter/treatment summary prepared by a psychotherapist with Commonwealth Clinical Group, it is noted that Smink "demonstrated exemplary therapy attendance" and "engagement in the treatment process," and that he has shown "engagement of prosocial goals and activities, continued overall stability including maintaining gainful employment, and a positive support network." (Doc. 56-1.)

sexual interest in and potential contact with minors, there is no question that a lifetime of supervision is necessary to reflect the seriousness of the offense, to provide just punishment, and most importantly, to protect other children. In this regard, it remains critical that Smink's use of the internet is monitored and that his presence around minor children is restricted. As this court previously indicated at sentencing in its Statement of Reasons: "[Smink] has a sexual attraction to young children and, accordingly, he poses a significant risk to the community. A term of supervised release of life, with conditions requiring sex offender registration and treatment, will allow for the monitoring of [his] conduct and help to protect the community." This remains true today.

## IV. CONCLUSION

For the reasons set forth above, Smink's Motion for Early Termination of Supervised Release (Doc. 55) will be denied. A separate order follows.

s/Sylvia H. Rambo  
SYLVIA H. RAMBO  
United States District Judge

Dated: May 29, 2024